Anh **PHAM and Roland W. Muller From the Decision of the Upper Merion Township Zoning Hearing Board Dated March 20, 2013**

v.

**UPPER MERION TOWNSHIP ZONING HEARING BOARD**

**Appeal of: Anh Pham and Roland W. Muller.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2015.

Decided April 10, 2015.

---

Robert J. Iannozzi, Jr., Lansdale, for appellants.

Bernadette A. Kearney, Lansdale, for appellee Upper Merion Township.

Julie L. Von Spreckelsen, Blue Bell, for appellee Upper Merion Township Zoning Hearing Board.

BEFORE: DAN PELLEGRINI, President Judge, P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

Anh Pham and Roland W. Muller, husband and wife, (Appellants) appeal from the November 25, 2013 order of the Court of Common Pleas of Montgomery County (trial court) which affirmed the decision of the Upper Merion Township Zoning Hearing Board (ZHB). The ZHB's decision reflects a tie vote of the ZHB's members, which has the effect of maintaining the status quo, i.e., a denial of Appellants' request for a use variance. Section 906 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10906.[1]

Appellants filed an application for a variance from section 165–22 of the Upper Merion Township Code, which governs use regulations in an R–1 single-family zoning district. Appellants seek the variance in order to use the property situated at 123 Gypsy Lane as a "bed and breakfast" (B & B). The ZHB held a hearing on February 6, 2013, after granting Appellants' request for a continuance in order to obtain counsel.

At the hearing, Appellants' counsel (Counsel) entered twelve exhibits into evidence. (Reproduced Record (R.R.) at 10a–14a.) Counsel's lengthy opening statement was subsequently adopted by Appellants as their own sworn testimony and can be summarized as follows.

Appellants' property comprises approximately two-and-a-half partially wooded acres and is improved with a six thousand square foot, two-and-a-half-story, single-family Georgian-type structure that was constructed in 1904 and enlarged in 1920. The home has twenty rooms: seven bedrooms, six and one half bathrooms, two dining rooms, a kitchen, a living room, and a den. The property is within the township's R–1 Residential District, and it is surrounded by roadways, a railway, an expressway, and township-owned property. The property uses public water and has a private on-lot septic system. (R.R. at 16a–20a.)

In Counsel's opinion, the home is now functionally obsolete due to its size, allocation of internal space, and the cost to heat

1. In relevant part, section 906 of the MPC states:

The board shall elect from its own membership its officers, who shall serve annual terms as such and may succeed themselves. **For the conduct of any hearing and the taking of any action, a quorum shall be not** **less than a majority of all the members of the board,** but the board may appoint a hearing officer from its own membership to conduct any hearing on its behalf and the parties may waive further action by the board as provided in section 908.

53 P.S. § 10906 (emphasis added).

and maintain it. The annual costs for heat and water alone exceed $20,000. Under these circumstances, the property cannot be reasonably used as a single-family dwelling and is better suited for use as a group home or a municipal office, both of which are permitted by right in the R–1 district. (R.R. at 21a–22a.)

Appellants sought the use variance in order to operate a year-round B & B in the current dwelling on the property. The B & B would provide breakfast, but not lunch and dinner. (R.R. at 22a–23a.) To accommodate a maximum number of fourteen guests (two per room), Appellants proposed to add nine parking spaces to the two existing parking spaces, thereby providing space for one vehicle per bedroom, two spaces for Appellants or staff, and two additional spots. Appellants would follow appropriate screening ordinances in regards to the added parking, and that in all other ways the proposal would be compliant with township ordinances. (R.R. at 23a–24a.)

Appellants would not make additions to the house other than for fire escapes and a small, second-floor deck, which would be integrated into one of the fire escapes. There will be no other exterior or architectural changes to the building, and the exterior space would only be changed to provide the added parking and buffering and additional landscaping. This landscaping would buffer the property from roadways on two sides and would beautify the area.

Any outdoor lighting would be residential, and not commercial in nature. Signage would be in compliance with local ordinances and if Appellants desired additional signage, they would apply to the ZHB for permission in the future. Given the continued residential use of the property and the high traffic volume in the surrounding area, the proposal would not additionally impact traffic. (R.R. at 24a–26a.)

Appellants have operated a B & B in Media, Pennsylvania, and that successful experience would lead to a positive result here, should the use variance be granted. (R.R. at 26a–28a.)

Counsel asserted that Appellants satisfied the criteria for the grant of a variance under section 910.2 of the MPC,[2] in that: (1) the property is unique, and the dwelling's age and size make it functionally obsolete, creating an unnecessary hardship; (2) due to those circumstances the property cannot be used as a single-family dwelling in strict conformity with R–1 use regulations, making the variance necessary to enable reasonable use of the property; (3) since Appellants did not build the dwelling, they did not create the unnecessary hardship; (4) if granted, the variance relief will not alter the essential character of the neighborhood, nor impair the use or development of adjacent property, nor be detrimental to the public welfare, because the property will still be used in a residential manner; and (5) Appellants' requested relief represents the minimum variance that will afford relief and the minimum modification of the regulation possible; specifically because the relief would allow Appellants reasonable residential use of the property. Finally, Counsel noted that the township had withdrawn its initial opposition to the variance. (R.R. at 29a–31a.)

Both Appellant Muller and Ellen Renish, Appellants' expert witness, testified that they would adopt Counsel's entire statement as their own. (R.R. at 34a, 79a.)

During his testimony, Muller confirmed Counsel's description of the property and the dwelling. Muller noted that the property is adjacent to one other home and

**2.** Added by the act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

that there are two homes across from it on Gypsy Lane. He added that the high heating costs are due to the facts that the dwelling is gas-fire heated, it consists of plaster and slats, and it has no insulation. Muller testified that because of these conditions he and his wife rarely stay at the residence, adding that the expenses he referred to only keep the house at fifty-eight degrees in the winter. Muller also testified that Appellants spent several years working to improve the property's condition. (R.R. at 35a–39a.)

In comparison to Appellants' dwelling, Muller described nearby homes as significantly smaller in terms of square footage and number of rooms, and he was unaware of any comparable homes in the area. Muller also said that, due to the home's age, the home requires above-average maintenance and repair costs. (R.R. at 39a–40a.)

With respect to the operation of a B & B on the property, Muller testified that guests would check out by 11:00 a.m. and could check in between 2:00 p.m. and 8:00 p.m. or later if they gave Appellants advance notice. (R.R. at 49a–51a.) Laundry would be contracted to an off-site laundry service. Trash would remain at normal levels because Appellants want the B & B to be environmentally friendly, and this would include composting garbage, and recycling paper, plastics, and glass. (R.R. at 44a–46a.) In terms of security and safety, Appellants would add a second-floor deck to one of the suites, which would connect a proposed third-floor fire escape to the ground via a circular staircase. The B & B would have at least one staff member on the premises at all times. (R.R. at 46a–47a.)

Muller envisioned future clientele primarily as out-of-town businesspeople, golfers playing at a nearby course, parents of students at one of seven local colleges, and possibly people coming in to shop at a mall about three miles away. (R.R. at 47a–48a.) He believed that these guests would likely stay one-to-two nights, but not more than two weeks. (R.R. at 48a.) Maximum, double occupancy of the B & B would be fourteen guests, and no cots or other sleeping arrangements would be provided so as to increase that number. (R.R. at 50a–51a, 77a.) Muller anticipated three to six guests each weekday, with more guests on weekends, and possibly a maximum number of guests for special occasions such as graduations. (R.R. at 51a.) Muller further stated that he was familiar with the capacity of the septic system and was satisfied that it is sufficient for the proposed use. (R.R. at 54a–55a.)

Regarding proposed exterior improvements, Muller stated there would be: general landscaping; addition of nine parking spots; grates at the front and back of the new parking area to catch water runoff; the second-floor deck and second- and third-floor fire escapes; evergreen tree barriers along South Gulph Road and Gypsy Lane; and evergreen tree buffering for the parking lot. Muller said that all of this would be done without altering the architectural aspects and residential characteristics of the dwelling and that Appellants would not add any active recreational areas such as tennis or basketball courts. (R.R. at 52a–55a.)

In response to questions from various ZHB members, Muller testified that he and his wife do not plan on selling the property, and since the variance would run with the land he would agree to whatever controls the ZHB requested to ensure that the property would always be operated to the same standards. (R.R. at 58a–59a.) He added that Appellants would be satisfied with putting the name of the establishment on the pre-existing mailbox or having no signage at all. (R.R. at 63a.)

Muller also explained that Appellant Pham originally purchased the property back in 1998 with her former husband. Although at that time the house was in a dilapidated condition and had been on the market for five years, they saw potential in it as a single-family home. Muller stated that the property could be sold to someone else as a home, but he believed that it would be more difficult to sell the property now because the improvements Appellants made over the years have made it pricier and because the noise from traffic on nearby highways makes it not conducive to family living. He explained that the B & B would not have available outside recreation areas, so that its guests would mainly be inside, where the noise is lower. Appellants have not tried to sell the property. (R.R. at 60a–63a, 69a.)

ZHB member Lynne Gold–Bikin questioned Muller about the actual proximity of the property to stores, stating that the B & B is in "the middle of nowhere, because the mall is at least three miles away.... So [Mr. Muller] talked about the stores around there, but there aren't any stores around there...." (R.R. at 63a–64a.) Muller acknowledged that the mall was three miles away, but he noted that GlaxoSmithKline was a one-minute drive away, and the golf course, which he thought would be their biggest source of business, is even closer. (R.R. at 64a–65a.) Gold–Bikin then stated her real concern was the cost of completing all of the proposed improvements. (R.R. at 65a–66a.) Muller replied that his ballpark estimate of the total cost would be $75,000.00. (R.R. at 66a–68a.) He stated that he already has one B & B business in operation and would expect to recoup costs from the proposed B & B as well. He also believed that the operating costs of the proposed B & B would be reduced because he and his wife would be running it and he would be doing a lot of the labor himself. (R.R. at 67a.)

ZHB member Mark DePillis voiced concerns about Muller's qualifications and the fact that a variance runs with the land and would pass to a new owner should Appellants sell the property. Muller responded that along with his experience that had already been mentioned, his wife and her two sisters had been working at the other B & B and would staff the proposed B & B as well. (R.R. at 69a–72a.) In response to DePillis' query, Muller said Appellants would agree to accept the following conditions if the ZHB was to approve the use variance: maximum length of stay of two weeks; a maximum of seven bedrooms with no more than double occupancy; no active recreation on the grounds; a staff member or owner on the grounds at all times; and no future conversion of the property into apartments or a boarding house. (R.R. at 72a–75a.)

Appellants offered the testimony of real estate expert Renish, who opined that the close proximity of the roadways negatively impacts the use of the property as a residential dwelling. (R.R. at 80a.) Renish stated that the property is large and unique and would be best suited for a family, but a family would not want to live there because of the roadways nearby. (R.R. at 81a.) She also testified that the lay-out of the residence might be considered reasonable if the property were in another area and more modern but that it is not similar to other properties in the community. (R.R. at 81a.)

Renish stated that if she were presented with a similar situation in a different area, she would recommend that the residence be significantly enhanced or else knocked down entirely. She believed that a knockdown was not economically feasible in this situation. (R.R. at 81a–82a.) When asked if there was anything Appellants could do with the property to maintain it as a sin-

gle-family dwelling that she would consider reasonable, Renish replied "I think it's more reasonable for the use that they are asking for because it would enhance the property." (R.R. at 82a.) It was also her opinion that Appellants did not create this hardship because the property is just functionally obsolete. (R.R. at 82a–83a.)

Renish also noted that there would be an impact on the neighborhood if the property were turned into a group-home, a use permitted by right in the R–1 district. She believed that a group home would negatively affect the area, and she noted that the township could not discriminate on the basis of physical or mental incapaci-

ty or addiction, thus making those permitted uses for a group home. (R.R. at 83a–84a.)

ZHB member DePillis asked if granting the variance would take away Appellants' right to turn the property into a group home or if they have any intention of doing so. Counsel responded that a property can be converted to a permitted use at any time, but that was not the intention here. (R.R. at 85a–87a.)

Public comments were received from sixteen individuals, half of whom supported the variance request[3] and half of whom opposed it.[4] The ZHB then questioned

---

3. William Dwinnell stated that he was comfortable with Appellants running the B & B. He voiced concern of what the property would be used for should the variance be denied and Appellants sell the property. He passes the property three times a week on walks and, as a former railroad facilities maintenance professional, realizes the limitations properties have and the specific congestion and limitations on use the property in question has. (R.R. at 92a–95a.)

Vance Grosso stated most of the neighborhood is comprised of three-bedroom homes, so having a B & B in the neighborhood for when guests visit would be a positive thing. He also favored granting the variance because Appellants had expressed interest in using local artisans in their decorating which would bring out local culture and upgrade the area. (R.R. at 95a–97a.)

Kay Axelrod supported the granting of the variance and believes Appellants are qualified to run the B & B. (R.R. at 97a–98a.)

Morton Axelrod stated he has known Appellants for over three years and considers them honest and professional people. Axelrod further stated Appellants had discussed their ideas for the B & B in several conversations with him and that nothing said in those candid and informal conversations was contradictory to the testimony given at the hearing. (R.R. at 98a–99a.)

Kevin Nerz, who is married to Ms. Pham's sister, said he is not aware of any complaints against Appellants' other B & B, nor a situation where guests became unruly

or intoxicated and police needed to be called. (R.R. at 100a–101a.)

Lisbeth Feliciano stated she lives six doors down from the property and walks by it every other day. She said that she can barely see into the property presently, without any of the proposed buffering, and therefore could not imagine the property being a nuisance to the neighborhood. Furthermore, her neighbors at 141 Gypsy Lane, as well as unidentified other neighbors, are all fine with the B & B. (R.R. at 102a–103a.)

Ken Forman agreed with the statements made by his neighbors. He also voiced concern about the possible commercialization of the property, stating that he did not want to see signage and cars parked out on the street, and he wanted the facility to be secure. If the commercialization could be avoided and the security of the facility ensured by on-site staff, he was in favor of the variance. (R.R. at 104a–105a.)

Finally, Daniel Gordon commented in favor of granting the variance, noting that his mother stayed in Appellants' other B & B during the past two years. (R.R. at 105a–106a.)

4. Robin Greene commented in opposition to granting the variance, expressing concern that this would be a slippery slope of commercialization and people would be able to get variances for tattoo parlors or hair salons in their homes. She also commented on the five-point test stating: Appellants should have realized the property was unique and there-

Muller about the issues and concerns that were raised by those individuals.

fore should have identified the hardship before purchasing the property; Appellants bought the residence, they did not build it; the variance may or may not alter the essential character of the neighborhood, but she is worried about what happens in the future; and she agrees this is the minimum variance necessary. (R.R. at 107a–09a.)

Van Weiss was concerned that the owners would not be on-site 24/7 and that at times it would only be a staff member. He was also concerned about the lack of testimony as to safety precautions in the building, nor about kitchen staff. Weiss had called the Montgomery County Health Department and the PA Department of Agriculture and found out neither regulate bed and breakfasts, nor does Upper Merion Township. (R.R. at 109a–11a.)

Heidi Tirjin entered an appearance in opposition to granting the variance. Tirjin stated that the B & B is bad for the health, safety, and welfare of the community because the B & B will bring travelers and truckers off the expressway and into the community, which will increase noise and create the potential that these people will drink alcohol, consume drugs, and harm children. Tirjin stated that she found a statistic that from 2006 to 2010 there were forty-one accidents at the intersection of South Gulph Road and Gypsy Lane, and that the B & B will increase traffic at this intersection. Because she lives across the road from the property, she believes the B & B will be bad for her family's health due to increased noise and headlights from the proposed parking lot shining directly into her house at all hours of the night, devaluing her property. She also expressed concern about storm water runoff and the capacity of the septic tank. (R.R. at 111a–15a.) Tirjin stated she believes the welfare of the community is at stake as it is already feeling commercial pressure from a nearby gas station, day care, medical building, and expressway entrance. Also, she noted that on Appellants' variance application they indicated that they had consulted with adjoining property owners but that she was not contacted. (R.R. at 115a–16a.)

Griffith Barger entered an appearance in opposition to granting the variance. Barger also lives across the street from the property and stated that this proposed use would increase his children's exposure to people from outside the community. (R.R. at 116a–18a.)

Sue Barger also entered an appearance in opposition to the variance, expressing concern: for her property value; about an increase in accidents at the intersection of South Gulph Road and Gypsy Lane; and that people looking for the B & B will accidentally knock on her door instead, exposing her kids to strangers. (R.R. at 118a–20a.)

Cynthia Miller, an adjacent property owner, entered an appearance in opposition to granting the variance. Miller was concerned that the B & B would devalue her property, and that a family would not want to live next to an expressway and a bed and breakfast. Miller stated Appellants recently added the sixth bathroom themselves, so they increased costs of upkeep. There is no buffer between her property and Appellants' and she is concerned for her family's safety and having strangers near her children. A ZHB member asked Miller to compare the size of her home to that of Appellants' and she answered her home is about 2,800 square feet, less than half of Appellants'. (R.R. at 120a–25a.)

Richard Doughert, president of the Gulph Mills Civic Association (GMCA), identified three concerns: (1) the members feel besieged by commercial encroachment; (2) traffic concerns on South Gulph Road; and (3) the safety aspect of non-residents coming in and out of the neighborhood. (R.R. at 125a–28a.)

Adjacent property owner Shawn Machese entered an appearance in opposition to the variance. He observed that two of the seven bedrooms in Appellants' residence are in the attic, and that the attic could be insulated and those bedrooms abandoned if Appellants wanted to reduce heating costs. Machese stated that within the past year Appellants also added approximately 260 square feet of heated space by enclosing an outdoor porch. (R.R. at 128a–30a.) Machese expressed concerns with transients in the community and the safety of the facility. He also believes that the property has a cesspool, not a septic tank. Machese expressed concerns about possible events such as weddings, noise, trash disposal, storm water runoff, the lack of an official parking lot, landscaping, signage, and second-story deck plans. (R.R. at 130a–33a.)

Muller said that all of the bedrooms existed when Pham purchased the home in 1998, and the attic is a finished third floor. (R.R. at 135a.) Muller stated that Appellants did add a bathroom two or three years ago by splitting an existing bathroom into two, during work that was required after a water line in that bathroom broke and flooded part of the home. (R.R. at 136a–37a.) Muller testified he believed the property had a septic tank, not a cesspool, and that a perk test was done when the home was purchased in 1998 and it has been functioning since then. (R.R. at 137a.)

On March 20, 2013, the ZHB issued a thirty-two-paragraph decision setting forth twenty-five Findings of Fact and seven Conclusions of Law. The ZHB's findings identify the parties, the property's address, its location in a residential district, the size of the lot, and a description of the structure, (Findings of Fact, ¶¶ 19); summarize Muller's testimony concerning the proposed B & B, (Findings of Fact, ¶¶ 10–16, 23); set forth Renish's testimony as to why she believes Appellants are entitled to a variance, (Findings of Fact, ¶¶ 17–19); note the issues raised in opposition to the application (Findings of Fact, ¶¶ 22, 24), and state that the ZHB members voted two in favor and two opposed to the variance, resulting in a denial of the variance request under section 906 of the MPC, (Findings of Fact, ¶ 25). The paragraphs labeled "Conclusions of Law" restate Appellants' request (Conclusions of Law, ¶ 26); fully set forth the applicable legal standards for granting a use variance, (Conclusions of Law, ¶¶ 27–29); state the essence of the positions advanced before the ZHB, (Conclusions. of Law, ¶¶ 30–31); and restate that the Board members voted two in favor and two opposed to the request, with the tie vote of the ZHB members constituting a denial of the variance request under section 906 of the MPC, (Conclusions of Law, ¶ 32).

 Appellants appealed to the trial court, which affirmed the ZHB's decision.[5] Appellants now appeal to this Court.[6]

## DISCUSSION

**Whether the ZHB's decision is supported by substantial evidence and/or is inadequate for purposes of appellate review**

 Appellants argue that the ZHB's decision is not supported by substantial evidence and is inadequate for purposes of effective appellate review. In making these arguments, Appellants complain that the ZHB's decision does not include specific credibility determinations, and they assert that the decision lacks adequate legal analysis and/or reasons for the ZHB's "denial" of the variance.

We note, however, that although the legal consequence of the ZHB's tie vote is a denial of Appellants' request, the conse-

---

5. On appeal from a decision of a zoning hearing board, where the trial court does not take additional evidence, its scope of review is limited to determining whether the local zoning agency committed an error of law and whether its necessary findings are supported by substantial evidence; the court may not substitute its judgment for that of the local agency unless the board manifestly abused its discretion. *Nascone v. Ross Township Zoning Hearing Board*, 81 Pa.Cmwlth. 482, 473 A.2d 1141, 1142 (1984).

6. Where, as here, no additional evidence is presented to the trial court, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225, 227 (1997). Because we review the ZHB's decision, we do not address any argument related to the trial court's decision.

quence of the split decision does not result from an affirmative action by the ZHB. Rather, it is a reflection of the ZHB's lack of authority to act other than by a majority of its members. Section 906 of the MPC, 53 P.S. § 10906.

In relevant part, section 906 of the MPC states as follows:

The board shall elect from its own membership its officers, who shall serve annual terms as such and may succeed themselves. **For the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of all the members of the board,** but the board may appoint a hearing officer from its own membership to conduct any hearing on its behalf and the parties may waive further action by the board as provided in section 908.

53 P.S. § 10906 (emphasis added).

Contrary to Appellants' assertions, the ZHB's findings and conclusions reflect that it considered, *inter alia,* the property's age, large size, number of bedrooms and dissimilarity to other properties in the area, as well as Appellants' alleged inability to use the property in strict conformity with the ordinance. (Findings of Fact, ¶¶ 19, 23; Conclusions of Law, ¶ 30.) The ZHB also set forth the applicable standards for the grant of a variance and enumerates the traditional five-part test found in the MPC. (Conclusions of Law, ¶¶ 27–29.) As noted by the trial court, the decision was signed by all four members of the ZHB.

After setting forth the relevant facts and law, the ZHB stated that its members voted two in favor and two opposed to the grant of the variance, resulting in a denial under section 906 of the MPC. Thus, the basis for the ZHB's decision is clear: the decision reflects that its members considered the evidence, the arguments made, and the applicable legal standards, and

that a majority of the members did not agree on what additional findings or conclusions the record supported. This constitutes sufficient support for a tie-vote decision.

■ We have previously held that a tie vote of a zoning hearing board conveyed to the applicant in writing, within forty-five days of the hearing, is a valid decision. *Danwell Corp. v. Zoning Hearing Bd. of Plymouth Twp.,* 108 Pa.Cmwlth. 531, 529 A.2d 1215, 1217 (1987); *Giant Food Stores, Inc. v. Zoning Hearing Bd. of Whitehall Twp.,* 93 Pa.Cmwlth. 437, 501 A.2d 353, 356 (1985). When a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in status quo. *Id.* (citing *In re First Congressional Dist. Election,* 295 Pa. 1, 144 A. 735, 739 (1928)).

In *Giant Food Stores,* this court considered the following question: "Where the two voting members of a zoning hearing board cast a divided one-to-one vote with respect to a request for a zoning use variance, has the board made a decision and, if so, does the decision constitute a denial of the requested variance?" *Id.* at 354. The court concluded that, under the language of former section 912, which is substantially the same as the language in current section 910.2, a tie vote of a ZHB constitutes a refusal of the action requested from it. *Giant Food Stores,* 501 A.2d at 354 (citing *Pennsylvania Publications v. Pennsylvania Public Utility Commission,* 152 Pa.Super. 279, 32 A.2d 40 (1943)).

The landowner in *Giant Food Stores* sought a use variance in order to construct a supermarket and a small shopping center on property zoned R–1 Residential. The zoning hearing board held a hearing on the variance request and, at its next meeting—with only two members in office at the time—the board took no action. At

a subsequent meeting, one of the then three members of the zoning hearing board declined to vote, having appeared at the first hearing as an objector. The min-utes of the hearing reflected that one of the remaining members voted to grant the requested variance, and the other member voted against the variance. Thereafter, the zoning officer issued a letter to the landowner describing the tie vote as a denial of the variance request.

The landowner filed a timely appeal in the court of common pleas, which remanded the matter back to the zoning hearing board for the making of findings. The landowner subsequently filed a mandamus complaint asking the court to mandate a deemed approval of its zoning variance request, on the ground that the divided vote constituted a failure of the board to make a decision within the forty-five day time limit after hearing, specified in section 908(9) of the MPC, 53 P.S. § 10908(9). The common pleas court entered an order refusing to issue a peremptory mandamus order, on the ground that, as a matter of law, the tie vote of the zoning hearing board constituted a refusal of the variance, rather than the absence of a decision that would trigger a deemed approval under the MPC.

The trial court certified its decision to allow for an interlocutory appeal by permission, 42 Pa.C.S. § 702, and, on appeal, we held that the trial court's decision "was entirely correct." *Giant Food Stores,* 501 A.2d at 355. We explained that

[w]hen a legal or semi-legal tribunal consists of only two members, neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two.... [W]hen a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in status quo.

*Id.* at 356 (citations and quotations omitted). We held that, "[i]n accordance with the settled principle that a tribunal's divided vote confirmed the status quo, ... a zoning hearing board's one-to-one vote has the legal effect of denying the variance request." *Id.* at 354. We also noted in Giant Food Stores that when a zoning board, by an evenly divided vote, refuses to alter the status quo, an aggrieved party can pursue the remedy of a statutory zoning appeal, as exemplified by the precautionary zoning appeal which the landowner had filed in that case.

In *Danwell,* landowners filed an application for a special exception with the Zoning Hearing Board of Plymouth Township. Following a hearing, the four-member board met in a public session at which two members voted in favor of the application and two members voted against it. The board subsequently issued a written document, dated forty days after the hearing, denying the application. Only two of the four board members signed that document. The landowners then filed a complaint in mandamus, requesting the trial court to order the board to enter a deemed approval of their zoning application as provided by section 908(9) of the MPC.[7]

7. Subsection 908(9) of the MPC provides in pertinent part:

The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within forty-five days after the last hearing before the board or hearing officer.... Where the board has power to render a decision and the board or the hearing officer, as the case may be, fails to render the same within the period required by this subsection, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing to an extension of time. Nothing in this subsection shall

The trial court initially agreed with the landowners' assertion that the document issued by the board reflecting its tie vote did not constitute a decision and ordered the approval of the landowners' application subject to compliance with applicable township regulations. However, after hearing oral argument on the board's motion for post-trial relief, the trial court noted this Court's recent decision in *Giant Food Stores*, in which, "this court expressly disavow[ed] any conclusion that a tie vote of a zoning hearing board constitutes the absence of a decision." 501 A.2d at 355. Accordingly, the trial court reversed its earlier decision and dismissed the landowners' complaint in mandamus.

On further appeal, this Court in *Danwell* considered "whether an evenly-divided vote by a zoning hearing board in a case involving special exception and interpretation issues, embodied in a writing issued by the board, constitutes a denial of the request and, as such, a decision within the time limit of section 908 of the MPC." *Id.* at 1216. We held that the trial court correctly applied our decision in *Giant Food Stores* to conclude that the result of the zoning hearing board's tie vote was a refusal of the landowners' request. In so holding, we explained that

[w]hether the zoning hearing board's action, memorialized in writing, be treated as one by an evenly-divided appellate tribunal (thus leaving in effect the negative administrative response which the landowner had appealed to the board) or as an original administrative response leaving a direct application unimplemented, the result is a refusal of the landowner's request.

529 A.2d at 1217. Thus, in both *Danwell* and *Giant Food Stores*, we recognized that a timely action by a zoning board which is reduced to writing, though it may not alter the status quo, is materially different from a lack of timely action that would warrant a deemed approval under section 908 of the MPC.

In this case, because the ZHB's tie vote decision is valid as a matter of law, *Danwell*, and because the ZHB's decision sets forth findings of fact upon which its members agreed, notes the relevant legal standards, and explains that its tie vote constitutes a denial of the variance as a matter of law, 53 P.S. § 10906, we conclude that the absence of additional findings or conclusions does not constitute an abuse of discretion and that the decision is adequate for purposes of appellate review.[8]

---

prejudice the right of any party opposing the application to urge that such decision is erroneous.

53 P.S. § 10908(9).

8. Although Appellants do not raise this issue, the concurring opinion concludes that this matter implicates the common pleas court's scope of review under section 1005–A of the MPC. In relevant part, section 1005–A states that "[i]f the record does not include findings of fact or if additional evidence is taken by the trial court ... the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any." 53 P.S. § 11005–A. However, there is no need for additional findings of fact in this case, because the ZHB's findings and conclusions are adequate to reflect its consideration of the evidence as well as the basis for its decision, i.e., a tie-vote.

The concurring opinion suggests that where no consensus is reached on disputed material facts, a *de novo* hearing is required. However, this reasoning contravenes our holding in *Giant Food Stores*: "when a judicial or semijudicial body is equally divided, the subject-matter with which it is dealing *must remain in status quo.*" *Id.* at 356 (emphasis added) (citations and quotations omitted). Rather than recognizing the ZHB's authority to issue a legally valid tie vote that maintains the status quo, the concurring opinion would hold that where, as here, a majority of zoning board members are not persuaded by the evidence presented to reach a certain result, such a tie vote entitles the losing party to a

**Whether Appellants satisfied their burden of proof as a matter of law by presenting sufficient uncontroverted evidence**

■ Appellants also argue that the ZHB abused its discretion in denying their request because Appellants presented sufficient, uncontroverted evidence to establish their right to a variance. We disagree.

■ In relevant part, section 910.2 of the MPC states:

The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2 (emphasis added). The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances. *Oxford Corp. v. ZHB of Borough of Oxford,* 34 A.3d 286 (Pa.Cmwlth.2011).

As noted above, the ZHB recognized the applicable standard for the grant of a variance, and a majority of its members did not agree on findings necessary under section 910.2 to support the grant of the variance in this case. Appellants now contend that they presented sufficient evidence to compel the issuance of such necessary findings. In support of this argument, Appellants rely on *Marshall v. City of Philadelphia,* —— Pa. ——, 97 A.3d 323 (2014).

*Marshall* involved an application by the Archdiocese of Philadelphia for use and

reconsideration of the evidence by the trial court. Such analysis cannot be reconciled with our holdings in *Danwell* and *Giant Food Stores.* Respectfully, the suggestion that the tie vote means that this case was decided on factors other than witness credibility and evidentiary weight ignores the obvious: all four members of the ZHB considered the evidence, but only half found it credible and/or entitled to sufficient weight to satisfy Appellants' burden of proof.

Importantly, under our holdings in *Danwell* and *Giant Food Stores,* the ZHB is not required to reach a consensus or issue a majority decision in order to satisfy the requirements of the MPC; therefore, no "requisite findings" are lacking, and no legal basis exists to remand the matter for an assessment of the evidence by a different tribunal.

dimensional variances required to convert an elementary school into a sixty-three-unit, one-bedroom apartment complex for low income senior citizens. The school had been constructed in 1912 and, after enactment of zoning codes, operated as a non-conforming use until it closed in 2008, due to declining enrollment and lack of sufficient funds.

At a hearing before the zoning hearing board, the Archdiocese presented witness' testimony that the proposed project constituted reuse of a neighborhood anchor that would have gone vacant and become a nuisance; there was widespread community support for the project; and there was a need for low-income senior housing. One objector testified against the Archdiocese's proposal, complaining vaguely about parking and people who live in government-subsidized housing and asserting that the Archdiocese had the burden to show why it was impractical to build single-family houses on the site.

After reviewing other uses permitted in the zoning district, the zoning hearing board unanimously voted to grant the variances requested. The zoning hearing board found that the Archdiocese had established: the overwhelming support from the surrounding community; the unique nature of the property, and in particular, its legally non-conforming character; the building was vacant, in need of repair, and providing no benefit to the community; and the grant of the variances would not adversely impact the health, safety, and welfare of the community. Further, the zoning hearing board found that the conditions underlying the request for variances were not the result of the Archdiocese's actions but rather were related to the property and its unique legally non-conforming character.

On appeal, common pleas court affirmed. On further appeal, however, this Court reversed, reasoning that a property owner seeking a variance must demonstrate that the entire building is functionally obsolete for any purpose permitted by the ordinance. The Archdiocese appealed to our Supreme Court, which reversed, explaining that, "in the context of use variances, unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted purpose only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance." *Marshall*, 97 A.3d at 329 (quotation omitted). The court further explained that, although a property owner is not required to show that his property is valueless unless a variance is granted, mere economic hardship will not of itself justify a grant of a variance. *Id.* at 330.

Observing that it is the function of the zoning hearing board to determine whether the evidence satisfies the criteria for granting a variance, the court held in *Marshall* that Commonwealth Court improperly substituted its judgment for that of the zoning hearing board, thereby exceeding its scope of review, and that it also applied an incorrect standard for unnecessary hardship.

Appellants cite *Marshall* for the proposition that the age, size, and unique nature of the physical structure on the property, the financial burden to conform the property to a permitted use, the desirability of the proposed use, and the impact on the community, are all evidentiary support for the grant of a variance.

Appellants acknowledge that the facts in this case are distinguishable from those in *Marshall* in that the existing use of the property is a permitted use. However, the more significant distinction is that in this case, the ZHB did not grant the variance,

did not issue findings that would support the grant of a variance, and, instead, effectively denied the variance under section 906 of the MPC by virtue of its tie vote.

Contrary to Appellants' contention, the testimony of record in this case does not compel the grant of a variance pursuant to *Marshall.* Here, Muller testified that his wife and her former husband purchased the property when it was significantly more deteriorated with the intent to use it as a single-family residence. Since that time, Appellants have made numerous improvements to the structure. Muller stated that the property could be sold to someone else as a home, but he believed that it would be more difficult to sell the property now because the improvements made over the years have made it pricier. (R.R. at 60a–61a.) Significantly, neither Muller nor Renish testified that the house could not be improved for purposes of maintaining it as a single family residence, such as by adding insulation, nor did they state that it would be economically prohibitive to add insulation or make any other necessary improvements. Renish only opined that it would be more reasonable to use the property as a B & B. (R.R. at 83a.) In addition, the record reflects that Appellants enclosed additional space, thereby increasing the cost to heat and maintain the structure.

 Mindful of the ZHB's exclusive authority to determine matters of witness credibility and evidentiary weight,[9] we conclude that the evidence does not establish Appellants' entitlement to a variance as a matter of law. Thus, we reject Appellants' contention that the holding in *Marshall* compels the grant of a variance in this case.

## Conclusion

Having determined that the ZHB's tie vote decision is valid as a matter of law, *Danwell,* sets forth the findings of fact upon which all of its members agreed, notes the relevant legal standards, explains that its tie vote constitutes a denial of the variance as a matter of law, 53 P.S. § 10906, and is signed by all four members of the ZHB, we conclude that the ZHB did not abuse its discretion and that its decision is adequate for purposes of appellate review. Because the ZHB has exclusive authority over matters of witness credibility and evidentiary weight, and after consideration of the entire record, we further conclude that Appellants are not entitled to a variance as a matter of law.

Accordingly, we affirm.

## *ORDER*

AND NOW, this 10th day of April, 2015, the order of the Court of Common Pleas of Montgomery County, dated November 25, 2013, is affirmed.

CONCURRING OPINION BY Judge BROBSON.

Like the majority, I would affirm the November 25, 2013, order of the Court of Common Pleas of Montgomery County (trial court). I agree with the majority that, as a matter of law, the evenly-divided decision of the Upper Merion Township Zoning Hearing Board (ZHB) is treated as a deemed denial of the variance request in this case. *See Giant Food Stores, Inc. v. Zoning Hearing Bd. of Whitehall Twp.,* 93 Pa.Cmwlth. 437, 501 A.2d 353 (1985). At that point, the statutory remedy available

---

9. It is well-settled that the ZHB is the sole arbiter of witness credibility and evidentiary weight. *Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 808–09 (Pa.

Cmwlth.2005). A zoning hearing board is free to reject even uncontradicted testimony that it finds lacking in credibility, including testimony of an expert witness. *Id.*

to Anh Pham and Roland W. Muller (Appellants) was an appeal under Article X–A of the Pennsylvania Municipalities Planning Code (MPC).[1]

I write separately because although the ZHB's decision complies with Section 908(9) of the MPC, 53 P.S. § 10908(9), inasmuch as it includes "findings of fact and conclusions of law ... with the reasons therefore," the reason therefore here was based not on matters of witness credibility or evidentiary weight, but on the ZHB members' inability to reach a majority view on those matters. This the majority acknowledges in its analysis of the first issue (*i.e.*, the legal adequacy of the ZHB's decision). In analyzing the second issue (*i.e.*, the merits of the variance request), however, the majority claims to accede to the ZHB's "exclusive authority over matters of witness credibility and evidentiary weight" in the absence of a decision by the ZHB that contains credibility determinations and weighs evidence. *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 892–93, 893, 2015 WL 1588025 (Pa.Cmwlth.2015). Respectfully, the majority's analysis of the second issue does not logically follow its analysis of the first. I thus cannot agree with this approach.

This case presents the question of a common pleas court's standard of review in a land use appeal where there is a deemed denial of a variance request due to an evenly-divided zoning hearing board, and the zoning hearing board's decision reflects no consensus view on disputed material facts relevant to the applicable legal analysis.[2] The answer to that question is found in Section 1005–A of the MPC, 53 P.S. § 11005–A, which provides that where the zoning hearing board's decision does not include the requisite findings of fact, the common pleas court "shall make its own findings of fact based on the record below as supplemented by ... additional evidence, if any." In essence, the trial court should hear the land use appeal *de novo* and not under an appellate standard of review, including deference to the ZHB.[3]

The trial court's opinion in this case, affirming the ZHB decision, purports to apply the appellate standard of review found in Section 1005–A of the MPC. Nonetheless, a reading of the trial court's opinion in its entirety convinces me that the trial court fully reviewed the evidence

1. Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §§ 11001–A to 11006–A.

2. It is noteworthy that the ZHB decision includes twenty-five separately-numbered findings of fact. The first nine of those findings describe Appellants, their property, and the nature of the proposed project, all matters which do not appear to be in dispute. Findings ten through twenty-four describe witness testimony on the matter of the variance request. Finding twenty-five provides that the ZHB was evenly-divided on the merits of the variance and, therefore, the variance was denied. Like the factual findings, two of the ZHB conclusions of law also merely recount testimony for and against the application for a variance. Accordingly, although the ZHB re-

counts evidence in its findings and conclusions of law, it makes no findings *from* that evidence, upon which the trial court could (a) review the record for substantial evidence support, and (b) apply to the legal standard for issuance of a variance to determine whether the ZHB erred as a matter of law. *See Marshall v. City of Phila.,* —— Pa. ——, 97 A.3d 323, 331 (2014) (setting forth appellate standard of review of a zoning board decision).

3. To resolve the issue of the adequacy of the ZHB decision for review under the MPC, which Appellants clearly raise before this Court, it is necessary to first determine what standard of review the trial court should have employed.

adduced during the hearing before the ZHB, weighed the evidence based on the arguments of the parties on appeal, applied its own factual findings to the governing law, and rendered an independent judgment that Appellants failed to meet their burden of proof with respect to their request for a variance. The trial court's decision is supported by substantial evidence and comports with governing law. For this reason, I would affirm the trial court's November 25, 2013 order.