IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vinwell Partners, LLC,          :
                  Appellant   :
                           :
         v.             : No. 635 C.D. 2024
                           : Argued: February 4, 2025
Peters Township Zoning    :
Hearing Board            :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE STACY WALLACE, Judge (P.)
               HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED: October 23, 2025


Vinwell Partners, LLC (Developer) appeals from the March 28, 2024 order of the Court of Common Pleas of Washington County (Common Pleas) affirming the decision of the Peters Township (Township) Zoning Hearing Board (Board) which denied Developer's request for front-yard and side-yard setback variances to allow Developer to build a single-family residence on its property located at 131 Stonebrook Drive, Canonsburg, Pennsylvania (the Property). Upon review, we affirm Common Pleas' order.

## I.    Background

The facts giving rise to this appeal, as well as the Board's and Common Pleas' extensive history with this matter, are not contested. The Property is a corner lot of

approximately one-quarter acre in size. Reproduced Record (R.R.) at 263a. Under the Township's Zoning Code[1] (Zoning Code), the Property's front-yard setback must be 50 feet, and the side-yard setback must be 15 feet. *See id.* To enable Developer to construct a single-family residence on the Property, Developer applied to the Board for a 23.65-foot variance from the front-yard setback and a 5-foot variance from the side-yard setback (Variances). *Id.* Common Pleas provided the following context to Developer's request:

> The pre-printed Application that [Developer] completed and filed with the Township explicitly set forth requirements of the [Pennsylvania] Municipalities Planning Code [2] [(MPC)] and the [Zoning Code]. The Application directed:
>
>> Per § 910.2 of the [MPC, 53 P.S. § 10910.2,] and § 440-903.A.1 of the [Zoning Code], no variance shall be granted until the applicant has established, and the . . . Board[] has made[,] all of the following findings (A through E) where relevant in a given case. Please indicate which of the following is applicable to your [v]ariance request.
>
> [Developer] then checked the box next to each of the findings (A through E). Finding D, entitled "Character of the Neighborhood will not change," required [Developer] to establish:
>
>> That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the lot is located, nor substantially or permanently impair the appropriate use or development of adjacent lots, **nor be detrimental to the public welfare.**

R.R. at 39a-40a (emphasis in original).

---

[1]  Township of Peters, Pa., Zoning Code (1955), *as amended*.

[2]  Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

The Board conducted numerous proceedings on Developer's application for the Variances, which the Board summarized as follows:

On or about April 20, 2021, a Public Hearing on [Developer's] Variance request was held before the Board. The Board issued its Decision which denied the requested Variance relief. Findings of Fact and Conclusions of Law to said Decision were submitted.

[Developer] appealed said Decision. On January 14, 2022, [Common Pleas] denied the Appeal and affirmed the [Board's] Decision concluding the Record lacked evidence demonstrating that [Developer's] proposed development would not be detrimental to the public welfare.

[Developer] requested Reconsideration. On February 7, 2022, [Common Pleas] vacated its previous Order, granted the Request for Reconsideration and Remanded the matter to the [Board] . . . with instructions that the Record be further developed with regard to the effect that [Developer's] request for [the Variances] would have on public safety.

On May 17, 2022, a Remand hearing was held before the [Board]. [Developer] was given full and fair opportunity to present its evidence and testimony, specifically as it pertained to the Remand Order and issue that the record be further developed with "regard to the effect of [Developer's] sought after dimensional [V]ariance would have on public safety." ([Common Pleas'] Opinion May 12, 2023)[.]

After close of the Record and deliberation by the Board, a Decision to deny [Developer's] request for [the Variances] was issued. Findings of Fact and Conclusions of Law followed the Decision.

[Developer] again appealed the Board's decision. On May 12, 2023, [Common Pleas] issued a Memorandum and Order [denying] the Land Use Appeal of [Developer] and Affirm[ing] the Decision of the [Board].

Developer filed a Request for Reconsideration[.] [O]n June 5, 2023, [Common Pleas] issued the following ORDER:

3

. . . upon consideration of [Developer's] Motion for Reconsideration, and the Supreme Court's decision in Metal Green, Inc. v. City of Philadelphia, 266 A.3d 495, 517 n.18 (Pa. 2021)[, Common Pleas] VACATES its order of May 12, 2023, and REMANDS this matter for further consideration by the [Board]. In particular, [Common Pleas] DIRECTS:

1) The [Board] to make explicit findings as to the credibility of the testimony received from engineers Robert Goetz and Michael Mudry;

2) The [Board] to make explicit findings that demonstrate that it weighed the evidence it received and which set forth its developed reasoning supporting its determination; and

3) The [Board], may, in its discretion, reopen its record and take additional evidence if it determines that additional evidence is necessary to a proper determination of [Developer's] request for a dimensional variance.

R.R. at 68a-69a.

On remand, the Board relied upon the evidence it received at its previous hearing and did not take additional evidence. *See id.* at 70a-77a. Relevantly, the Board recounted the qualifications and testimony of Robert Goetz (Goetz) and Michael Mudry (Mudry), both of whom are registered professional engineers. *See id*. at 70a-75a. Goetz testified that his company performs "traffic impact studies," and that he placed traffic recorders on the roadway which forms two of the Property's borders to obtain traffic data. *Id.* at 275a-76a. Goetz then explained this data included traffic volumes and the speed of each vehicle. *Id.* at 276a.

Goetz used the data from his traffic study to compute average vehicular speed on the roadway, which he compared with safe vehicular speeds for that stretch of roadway. R.R. at 277a-78a. Goetz also computed the sight distances in the curves

4

near the property and determined the sight distances would increase if Developer cut the brush on the Property during construction, which was planned. *Id.* at 279a-81a. Goetz specifically used these sight distances to calculate safe vehicular stopping distances. *Id.* at 280a. In addition, Goetz reviewed historical vehicular crash data in the area, and suggested ways the Township could "help guide motorists through" the curves in the roadway. *Id*. at 282a-85a. At the conclusion of this testimony, which was focused on vehicular traffic, Goetz testified that **"[f]rom a traffic engineering standpoint, the development of this lot should have no bearing on the health, safety or welfare of the residents or adjoining areas there."** *Id.* at 286a (emphasis added).

After continuing to discuss vehicular issues, Goetz was asked whether his study considered "whether anyone is walking on the road while the cars are going by?" R.R. at 294a. Goetz responded that "[w]e measure the speed of every vehicle, obviously not pedestrians. Again, we don't have video out here." *Id.* At the end of Goetz's testimony, he had the following exchange with a concerned neighboring landowner:

> [Neighbor]: My question is, there seemed to be [a] lot of testimony about vehicular traffic. I'm wondering about pedestrian traffic in association. Was there any study or information on safety with pedestrians walking in that . . . curve that we are talking about[?]
>
> . . . .
>
> [Goetz]: We didn't collect pedestrian counts. On some studies, we do. We did not collect pedestrian counts out here. I can't go on the record and tell you there's X amount of pedestrians within this hour or that hour, whatever. One consideration - - I think that the [Neighbor] is driving at is, because there's no sidewalks, because some of the topography and the grade behind the curves here, people almost are forced out into the cartway of the road in order to go through here.

> One thing I can say is . . . the [low] vehicular speed . . . coupled with the sight distance, I think, removing vegetation on the [Property] is going to make it safer for pedestrians as well.

*Id.* at 304a-05a.

Goetz also testified to reviewing Mudry's expert report, which agreed with his own report. R.R. at 286a. Mudry was also present at the hearing and testified briefly to address the Board's question. *Id.* at 330a-31a. In response to a Board member questioning whether Mudry "ever consider[s] pedestrians," Mudry opined:

> Yes, I was there. I drove down there tonight. I saw a number of people you're talking about walking dogs along the street . . . . There are pedestrians out there. Development of this lot is what they are planning on doing with these conditions, as Mr. Goetz testified. I documented this actually improves the sight distance on the corner. It actually makes it better because vehicles can see the pedestrians better, and the pedestrians will be able to see the vehicles coming through the S curve with more sight distance. More sight distance, in my opinion, is a better situation actually.

*Id.* at 333a-34a.

In issuing its supplemental findings of fact, the Board found Goetz specifically stated that "[f]rom a traffic engineering standpoint," Developer's proposal would not have a negative impact on the health, safety, or welfare of the Township's residents. R.R. at 73a. The Board also found Mudry's "Report and testimony reached conclusions 'from a traffic engineering standpoint.'" *Id.* at 75a. The Board further found:

> 23. Upon [q]uestioning, although Mr. Mundry indicated that, with [c]onditions, his opinion was that the area was safe, he stated:
>
> **"What I am saying is the signs and the pavement markings that have to do with the curve and the pedestrians that walk out there every day, that's an issue that I think should be addressed.**["][]

6

24. Neither the Report of Mr. Goetz and his testimony, nor the report of Mr. Mudry address the issues of safety *from the perspective of pedestrians traversing the subject area.* Neither provided substantial competent evidence to show the proposed development is not a use that will worsen safety considerations in the neighborhood.

25. Both Mr. Goetz and Mr. Mudry stated that a means existed by which pedestrian access and usage could be calculated in a study. Although the means to calculate the specific issue on remand existed, neither expert, nor the evidence submitted by [Developer], addressed issues of pedestrian safety.

. . . .

28. While in reaching its Decision the Board did not afford weight to the unsubstantiated statements raised by those in opposition to the Variance[s],[3] it is noted that Mr. Goetz testified that he reviewed the Hearing Transcripts[,] Findings, Conclusions[,] and Decision of the Board. Despite such review and knowledge of safety concerns and the scope of [Common Pleas'] Order, [Developer] failed to perform pedestrian counts and *failed to provide testimony or evidence from this safety perspective as indicated as an issue raised in the Record and specifically identified in [Common Pleas'] Memorandum Opinions and Orders.*

29. In this regard, as it pertains to pedestrian safety in the subject area and as specifically pertains to [Common Pleas'] instruction on remand, the Board finds that the reports and testimony of Mr. Goetz and Mr. Mudry lack credibility.

. . . .

31. In reaching its Decision, the Board relied upon the evidence of record, the Testimony as a whole as it pertained to Mr. Goetz and Mr. Mudry, the opportunity to observe both Mr. Goetz and Mr. Mudry in person, the opportunity to observe the demeanor of both Mr. Goetz and Mr. Mudry in person as each presented testimony and answered questions from the Board[,] and the review of each report issued by Mr. Goetz and Mr. Mudry.

---

[3] Several neighboring landowners expressed concerns to the Board regarding traffic safety, pedestrian safety, and potential negative impacts on property values. R.R. at 313a-27a.

. . . .

> 39. In reaching its Decision [the] Board did not disregard evidence of record but to the contrary, analyzed such evidence, weighed credibility, made credibility determinations, weighed all evidence of Record and rendered its Decision upon the Record, and herein states such as the reasons for the denial of the requested [V]ariances.

R.R. at 75a-77a (bold emphasis in original; italics emphasis added). Having rendered these specific findings, the Board incorporated its previous conclusions that Developer "failed to carry its burden of proof in addressing the issue on [r]emand, specifically safety as it pertained to pedestrians." *See id.* at 77a, 265a.

Developer appealed the Board's order to Common Pleas.[4] In essence, Developer asserted the Board capriciously disregarded the uncontradicted testimony of Goetz and Mudry and erred as a matter of law in determining Developer failed to carry its burden of proof. *See* R.R. at 45a-51a. Common Pleas determined the Board was permitted to make credibility determinations and to reject evidence, even uncontradicted testimony, and that the Board's decision to reject Goetz and Mudry's opinions was not a capricious disregard of evidence. *Id.* at 45a-49a. Common Pleas also determined the Board did not err as a matter of law. *Id.* at 49a-51a. As a result, Common Pleas denied Developer's appeal and affirmed the Board's decision. *Id.* at 51a. Developer appealed Common Pleas' decision to this Court.

---

[4] On the same day, Developer also filed a motion requesting Common Pleas hear additional evidence. *See* R.R. at 43a. Common Pleas denied Developer's request and heard Developer's appeal based upon the Board's record. *Id.*

8

## II.     Issues

On appeal, Developer raises three issues for our review.[5]  First, Developer asserts the Board capriciously disregarded evidence by rejecting Goetz's and Mudry's uncontradicted expert testimony.  Second, Developer asserts the Board failed to set forth a developed reasoning as required by Common Pleas' remand order.  Finally, Developer asserts the Board's findings are not supported by substantial evidence.

## III.     Analysis

Because "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas."  *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted).[6]  We evaluate whether the Board committed an error of law, violated the appellant's constitutional rights, or violated agency policy and procedure.  *See* 2 Pa.C.S. § 754.  In addition, we evaluate whether substantial evidence supports the Board's findings of fact.  *Id.*

---

[5]   Developer identified four questions in the statement of questions presented section of its brief. *See* Developer's Br. at 3.  Nevertheless, Developer presented argument in support of four different, yet related, issues in the argument section of Developer's brief.  *See generally id.*  Those four issues are: (1) "the determination of the [Board] and [Common Pleas] constitute a capricious disregard of the evidence;" (2) "the [Board] failed to set forth a developed reasoning supporting its determination;" (3) "although the [Board] made credibility determinations, the findings of the [Board] are not supported by substantial evidence in the record;" and (4) "the determinations of [Common Pleas] and the [Board] should be reversed based on well[-]established precedent."  *Id.* at 13, 17, 22, 30.  Although Developer listed its fourth issue as a separate issue, Developer used its fourth issue to repeat its arguments for the previous three issues.  *Id.* at 30-34.  Thus, for clarity and ease of analysis, we address Developer's first three issues.

[6]   Although we review the Board's decision, we acknowledge the well-written and well-reasoned March 28, 2024 memorandum and order of Common Pleas' Judge Michael J. Lucas.

9

## A. Capricious Disregard

Developer's first issue for this Court's review is whether the Board capriciously disregarded the testimony of Goetz and Mudry. *See* Developer's Br. at 13-17. It is well settled that a "zoning board, as fact[]finder, is the sole judge of credibility." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014) (citations omitted). "More specifically, a zoning board determines the credibility of witnesses and weighs their testimony, resolves conflicts in testimony, and, in doing so, may accept or reject the testimony of any witness in part or *in toto*." *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 506 (Pa. 2021). "In making these determinations, a zoning board is free to reject even uncontradicted testimony, including expert testimony, it finds lacking in credibility." *Id.* at 506-07 (citation omitted).

"[A] capricious disregard occurs only when the fact finder deliberately ignores relevant competent evidence, and acts in deliberate and baseless disregard of it." *Id.* at 514. "Although the capricious disregard standard is a component of a court's review of an administrative agency decision . . . ," "it should remain a rare instance where a reviewing court disturbs an adjudication based on a capricious disregard of the evidence standard." *Id.* at 514-15.

Here, the Board extensively quoted Goetz's and Mudry's testimony. The Board then explained why it did not find their testimony credible on issues of pedestrian safety. Therefore, the Board did not ignore, or capriciously disregard, Goetz's and Mudry's testimony. As Common Pleas noted, Developer "begs this [C]ourt to override the credibility and weight determinations" of the Board. R.R. at 48a. We decline to do so, however, because the Board is the sole judge of credibility.

*Marshall*, 97 A.3d at 331.  Therefore, Developer's arguments the Board capriciously disregarded Goetz's and Mudry's testimony fail.[7]

**B.     Developed Reasoning**

Developer's next issue for this Court's review is whether the Board set forth a "developed reasoning" for its determination, as required by Common Pleas' remand order.  *See* Developer's Br. at 17-22.  Common Pleas derived this standard from *Metal Green*, where the Pennsylvania Supreme Court explained that while a "fact-finding tribunal has the discretion to accept some, all, or none of the evidence presented," the tribunal must "provide sufficient reasoning" for its decisions to enable a reviewing court to perform meaningful appellate review.  *Metal Green*, 266 A.3d at 517 n.18.  Here, Developer focuses its arguments on the Board's failure to credit Goetz's and Mudry's uncontradicted testimony.  *Id.*  Developer asserts the Board's determination is based solely upon Goetz's and Mudry's failure to perform a pedestrian count.  *Id.* at 17.  Developer also asserts Goetz's and Mudry's testimony addressed issues of pedestrian safety.  *Id.* at 18.

Upon review of the record in this matter and the Board's Decision, it is evident to this Court that the Board expressed concerns about pedestrian safety early in this process.  Knowing the Board had these concerns, Developer attended the remand

---

[7]  Developer's arguments appear to stem from confusion regarding its burden of proof in this matter.  Developer, as the party seeking a variance, bore the burden of proving the Variances satisfied the Zoning Code's requirements for variance relief.  *See Schindler Elevator Corp. v. Dep't of Lab. & Indus.*, 303 A.3d 874, 882 (Pa. Cmwlth. 2023) (citation omitted).  "The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances."  *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 891 (Pa. Cmwlth. 2015) (citation omitted).

   The Board did not render findings or conclusions that Developer's plan would negatively impact pedestrian safety.  Such findings and conclusions would require evidentiary support, which we agree is not present in the record.  Instead, the Board was able to rely on the record's lack of credited evidence the Variances would not be detrimental to pedestrian safety to support its conclusion that Developer failed to carry its burden of proof.  R.R. at 77a, 265a.

hearing and chose to have its experts focus primarily on vehicular traffic speed and vehicular traffic counts. *See* R.R. at 70a-77a. While Developer's experts attempted to briefly extrapolate their traffic engineering findings to issues of pedestrian safety, the Board did not find that they meaningfully testified about specific pedestrian safety issues. As a result, the Board found Goetz's and Mudry's testimony not credible regarding issues of pedestrian safety.

As outlined above, the Board fully explained its reasoning for rejecting Goetz's and Mudry's opinions regarding pedestrian safety such that this Court could review the Board's determinations. *See Metal Green*, 266 A.3d at 517 n.18. Accordingly, Developer's argument the Board failed to set forth a developed reasoning for its determination does not carry the day.

## C.     Substantial Evidence

Developer's final issue for this Court's review is whether the Board's findings of fact are supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). In conducting a substantial evidence analysis, we look to see whether there is evidence that supports the factfinder's factual findings, but "not whether there is evidence in the record which supports a factual finding contrary to that made by the [factfinder]." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Developer, again, focuses its arguments upon the Board not finding the testimony of Goetz and Mudry credible. *See* Developer's Br. at 22-30. Developer specifically argues the Board's finding of fact #24 (quoted above) regarding pedestrian safety is not supported by substantial evidence because: (a) Goetz and

12

Mudry considered pedestrian safety, (b) Goetz and Mudry testified regarding issues of pedestrian safety, and (c) the Board based its determination on the lack of a pedestrian count, which is not a requirement. *Id.*

Developer, however, misinterprets finding of fact #24, which provided Goetz and Mudry did not address issues of safety "from the perspective of pedestrians traversing the subject area." *See* R.R. at 75a. The record supports this finding, as both Goetz and Mudry extensively testified regarding vehicular traffic and stated they were offering opinions from a traffic engineering perspective.[8] *Id.* The Board's finding of fact #24 also stated Goetz and Mudry did not provide "substantial competent evidence to show the proposed development is not a use that will worsen safety considerations in the neighborhood." *Id.* The record also supports this, because the Board did not find Goetz and Mudry credible[9] regarding issues of pedestrian safety, and Developer did not offer any additional evidence to address

---

[8] The Institute of Transportation Engineers defines "traffic engineering" as "the subdiscipline of transportation engineering that addresses the planning, design and operation of streets and highways, their networks, adjacent land uses and interactions with other modes of transportation and their terminals." *See* Resources, https://www.ite.org/technical-resources/topics/traffic-engineering/ (last visited September 29, 2025). Accordingly, the discipline of traffic engineering could include matters affecting pedestrians. *Id.* Nevertheless, Developer's experts specifically studied vehicular numbers, speed, and traffic control devices, but did not obtain pedestrian numbers or study pedestrian traffic patterns around the Property. *See* R.R. at 74a (Goetz stated "[w]e didn't collect pedestrian counts. On some studies we do. We did not collect pedestrian counts out here."). Developer's experts' attempts to extrapolate their vehicular traffic studies to pedestrian traffic was not credited by the Board, as fully outlined above.

[9] In the future, the Board is encouraged to explain whether its conclusions relating to the credibility of expert witnesses are a result of truthfulness or competency concerns. Here, the Board noted it had observed Developer's experts' demeanor while testifying, implying a potential issue of truthfulness. R.R. at 76a. Nevertheless, the Board related its conclusions on credibility to Developer's experts' failure to specifically study pedestrian safety issues, implying an issue of competency. Although the Board's credibility conclusions were sufficient for this Court to engage in meaningful appellate review, the Board should strive for additional clarity in the future.

13

pedestrian safety. Accordingly, Developer's argument the Board's finding of fact #24 was not supported by substantial evidence fails.[10]

## IV. Conclusion

For the reasons set forth above, we affirm Common Pleas' March 28, 2024 order.

_____
STACY WALLACE, Judge

---

[10] Even if we determined the Board's finding of fact #24 was not supported by substantial evidence, we would conclude the Board's error was harmless because the Board's remaining findings of fact would be sufficient to support its conclusions.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vinwell Partners, LLC, : 
                 Appellant : 
                       : 
        v. : No. 635 C.D. 2024
                       : 
Peters Township Zoning : 
Hearing Board : 

# **O R D E R**

    **AND NOW**, this 23rd day of October 2025, the March 28, 2024 order of the Court of Common Pleas of Washington County is **AFFIRMED**.

 

                                      _____
                                      STACY WALLACE, Judge