IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RDM Group and Zom     :
Construction Company,    :
     Appellants   :  No. 1081 C.D. 2021
            :
    v.      :  Submitted: September 23, 2022
            :
Pittston Township Zoning    :
Hearing Board and Pittston   :
Township        :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH      FILED: February 20, 2024

    In this zoning case, Appellants RDM Group (RDM) and Zom Construction Company (Zom) (together, RDM) appeal from the September 2, 2021 order of the Court of Common Pleas of Luzerne County (trial court), which affirmed the April 10, 2020 decision and order of the Pittston Township (Township) Zoning Hearing Board (ZHB). In its decision, the ZHB denied RDM's requests for use and dimensional variances sought as part of its proposal to construct a warehouse facility in the Township.[1] After careful review, we reverse and remand for further proceedings.

---

[1] Zom is the current legal owner of the subject property (Property) and is under contract to sell it to RDM. (ZHB Finding of Fact (FOF) 1; Reproduced Record (R.R.) at 292a.) Zom purchased the Property from the Pennsylvania Coal Company in 1974. (R.R. at 308a.) Although both RDM and Zom are named Appellants, only RDM, as the putative purchaser and equitable owner of the subject property, applied for zoning relief below. The agreement of sale is contingent on RDM's obtaining any necessary zoning relief to construct the proposed warehouse facility. (R.R. at 305a.)

# I.     FACTS AND PROCEDURAL HISTORY

RDM proposes to build a 164,640-square-foot warehouse facility on a vacant, 17.9-acre[2] triangular parcel of property situated along Freeport and Langan Roads in the Township (the Property) (FOF 1, 2.)  The Property is composed of vacant woodlands and is burdened by a creek running across its southern part.  (Notes of Testimony (N.T.), 2/27/2020, at 60; R.R. at 108a.)  The Greater Pittston Chamber of Commerce has designated a small portion of the Property (approximately 20%) to be within the Grimes Industrial Park.  *Id.* at 60-61; R.R. at 108a-09a.  Pursuant to the applicable provisions of the Radnor Township Zoning Ordinance (Zoning Ordinance),[3] the Property is zoned in the R-1 Single Family Residence District (R-1 District) and is bordered on the west and south by property in the Industrial District (I-1 District) and on the east by a property also in the R-1 District.  *Id.* at 67-70; R.R. at 115a-18a. Pursuant to Article 5 of the Zoning Ordinance, warehousing is a permitted use in the I-1 District and Industrial Flexible District (I-2 District), but not in the R-1 District.  (FOF 4; S.R. at 78b, 83b.)[4]

On December 13, 2019, RDM applied for a zoning permit to construct the warehouse facility.  (R.R. at 317a.)  Terrance J. Best, the Pittston Township Zoning Officer (Zoning Officer), denied the application on January 7, 2020, on the ground that

---

[2] Although the ZHB found that the Property is composed of 18.5 acres based on the description contained in the deed to its current owner (Zom), RDM's engineer, Rocco Caracciolo, commissioned a new survey of the Property that indicates an area of 17.9 acres.  (R.R. at 107a-08a.)

[3] Township of Pittston, Luzerne County, Pa. Zoning Ordinance, Ord. No. 2-01 (2013), *as amended.*  The current version of the Zoning Ordinance is included in the Supplemental Reproduced Record (S.R.) submitted jointly by the Township and ZHB.

[4] Several uses are permitted in the R-1 District by right, by special exception, or as conditional uses.  These include, *inter alia*, single-family detached and semi-attached dwellings, essential services, forestry, group homes, nurseries, greenhouses, non-profit clubs and lodges, schools, and recreation areas.  (S.R. at 80b-83b.)

warehousing was not a permitted use in the R-1 District. (R.R. at 321a.) RDM appealed to the ZHB, requesting a use variance and six dimensional variances related to the layout of the proposed parking lot and lawn. (R.R. at 322a-23a.)[5]

The ZHB conducted a public hearing on the variance requests on February 27, 2020. (FOF 5, 6.) At the hearing, RDM called five witnesses. RDM first called Alan Rosen, a certified general real estate appraiser. (N.T., 2/27/20, at 13-14; R.R. at 61a-62a.) Mr. Rosen testified that he is familiar with the Property and has appraised numerous industrial buildings in the area. *Id.* at 16; R.R. at 64a. He opined that the Property, as currently zoned, is not marketable and has "extremely minimal" and "distressed" value because it is "shoehorned" between industrial properties on two sides. *Id.* at 16-19; R.R. at 64a-67a. For the same reason, Mr. Rosen explained that it would not be "advisable" to construct a single-family dwelling on the Property. *Id.* at 21; R.R. at 69a. He also testified that, given his belief that the closest residence is approximately 1,000 feet from the Property, the value of nearby residences would not be impacted if the variance was granted and the warehouse constructed. *Id.* at 28-29,

---

[5] Specifically, RDM requested dimensional variances from the following sections of the Zoning Ordinance:

> (1) Section 1115 of the Zoning Ordinance, which requires that a parking lot be at least 25% of the total warehouse building area and contain one parking space for every 1,000 square feet of building area. (Zoning Ordinance § 1115; S.R. at 211b.)
>
> (2) Section 317.2(C) of the Zoning Ordinance, which requires the placement of a specified number of landscaped islands and/or strips throughout the parking lot. (Zoning Ordinance § 317.2(C)(1), (2), (4); S.R. at 66b-67b.)
>
> (3) Section 307.7(A) of the Zoning Ordinance, which requires the placement of a 100-foot yard where an industrial use meets a residential use. (Zoning Ordinance § 307.7(A); S.R. at 61b.)

(R.R. at 323a.)

3

36, 45; R.R. at 76a-77a, 84a, 93a. He acknowledged that, to his knowledge, nothing about the physical characteristics of the Property would preclude a person from building a single-family dwelling there. *Id.* at 22; R.R. at 70a.

RDM next called Rocco Caracciolo, a professional land development engineer. *Id.* at 56; R.R. at 104a. Mr. Caracciolo testified that he and RDM's representatives initially believed that the Property was zoned industrial, but later were advised that the Property was zoned residential. *Id.* at 67; R.R. at 115a. He further testified that, given the Property's irregular shape and the proposed location of the warehouse, RDM would not be adding an industrial use to the neighborhood any closer to residences than are the existing industrial uses adjacent to the Property, which include a large FedEx distribution warehouse,[6] a trucking company, and a TJ Maxx warehouse. *Id.* at 68-69, 81-82; R.R. at 116a-17a, 129a-30a. The closest residence from the proposed warehouse would be approximately 1,000 feet and the closest residential development approximately 2,000 feet. *Id.* at 75; R.R. at 123a. Mr. Caracciolo opined that a person could build a single-family dwelling on the Property, but it would not be practical. *Id.* at 80, 95; R.R. at 128a, 143a. He explained that the FedEx facility to the south does not comply with the Zoning Ordinance's 100-foot buffer requirement because the driveway to the facility is only 11 feet from the Property, which proximity increases noise, fumes, and traffic and frustrates a possible residential use. *Id.* at 98-102; R.R. at 146a-50a. He also opined that the construction

---

[6] The Township's Zoning Officer indicated that one of the parcels adjacent to the Property was re-zoned in 2016 from the R-1 District to the I-1 District to accommodate the construction of the FedEx facility. (N.T., 2/27/20, at 38-41; R.R. at 86a-89a.)

of RDM's warehouse would not adversely affect the health, welfare, and safety of the surrounding community. *Id.* at 82; R.R. at 130a.[7]

Isaac Neuman, RDM's Director of Development and Director of Management, next clarified that RDM intends to construct a large "flex space" site that can be rented by local businesses. *Id.* at 134, 137; R.R. at 182a, 185a. RDM intends to divide the building into smaller sections that each could be rented by local businesses. *Id.* at 138-39; R.R. at 186a-87a. Mr. Neuman believes that the traffic increase from the warehouse would be miniscule. *Id.* at 141; R.R. at 189a. He also explained that the Property initially was advertised as being zoned industrial and that the Township Zoning Officer told RDM that the Property was zoned industrial. *Id.* at 136, 151; R.R. at 184a, 199a. After further investigation and the expenditure of a "considerable amount" of money, RDM learned that it was zoned residential. *Id.* at 135, 155; R.R. at 183a, 203a. RDM has no interest in purchasing the Property if it cannot develop the proposed warehouse. *Id.* at 136; R.R. at 184a.

RDM next called Jeffrey Fiore, a civil engineer employed with Maser Consulting who conducted a traffic impact study of RDM's proposed development. Based on his observations, Mr. Fiore concluded that the additional site traffic generated by the project would permit the nearby intersections to continue to operate as they do currently. *Id.* at 174; R.R. at 222a. Mr. Fiore approximated that the development would add 300 additional vehicle trips, either into or out of the site, per day. *Id.* at 174-75; R.R. at 222a-23a. He opined that the current roadway system is sufficient to accommodate the additional traffic without an increase in congestion. *Id.* at 175-76;

---

[7] With regard to the requested dimensional variances, Mr. Caracciolo testified that RDM was "proposing a more traditional parking lot that . . . is easier to maintain, . . . limits the impervious surface, . . . [and] make[s] it more efficient [so that RDM] can put more landscaping around . . . the perimeter o[f] the [P]roperty." *Id.* at 64; R.R. at 112a. *See also id.* at 76-79; R.R. at 124a-27a.

R.R. at 223a-24a. He also opined that RDM's proposed parking design and layout could accommodate the warehouse traffic. *Id.* at 176; R.R. at 224a. He does not believe that the traffic impact from the warehouse would be contrary to the public interest or have adverse impacts on the health, safety, and welfare of the community. *Id.* at 177-78; R.R. at 225a-26a.

RDM lastly called John Varaly, a professional land use planner. Mr. Varaly opined that use of the Property for residential purposes is "impractical" and "defies conventional wisdom" because it is surrounded on two sides by industrial uses, and the entire neighborhood has been developed in an industrial character. *Id.* at 202-03; R.R. at 250a-51a. Mr. Varaly noted that the industrial uses neighboring the Property were expansive and that a person has to drive through industrial developments to get to the Property. *Id.* at 204-05; R.R. at 252a-53a. Regarding whether the character of the surrounding industrial properties causes hardship, Mr. Varaly testified:

> It does because there[ is] no practical use for the [P]roperty other than . . . industrial. If you were going to develop residential on that site, I do[ not] think anybody would want to invest money to build a home on that particular site as a long-term investment knowing that you have industrial on all three sides.

*Id.* at 205-06; R.R. at 253a-54a. He finally opined that RDM's proposed use would not adversely impact the public interest and would be the least zoning modification possible. *Id.* at 207; R.R. at 255a.

The Township then called its engineer, Michael Amato, to testify in opposition to the variance requests. *Id.* at 230; R.R. at 278a. Mr. Amato agreed that the Property is an irregularly shaped lot, but also testified that he believed that residential lots could be developed there. *Id.* at 231; R.R. at 279a. He also agreed with

6

Mr. Fiore's traffic study results indicating that the current roadways could accommodate the additional traffic caused by the warehouse. *Id.* at 232; R.R. at 280a.

At the conclusion of the hearing, the ZHB unanimously voted to deny RDM's variance requests. (ZHB Op. at 8-9 (unpaginated); ZHB Conclusions of Law (COL) 3-8.) In its written opinion mailed on April 10, 2020, the ZHB explained that strict application of the Zoning Ordinance's requirements would not cause RDM unnecessary hardship. (COL 3.) More specifically, the ZHB concluded as follows:

> 4. There are no unique physical circumstances or conditions peculiar to the [Property;] thus, there is no unnecessary hardship due to such conditions, nor are there any circumstances or conditions generally created by the provisions of the Zoning Ordinance.
>
> 5. Because of there being no physical circumstances and conditions, authorization of a use variance is unnecessary to enable reasonable use of the [Property] with respect to the construction of a warehouse in the R-1 [District]. Rather, **there is a possibility that the [P]roperty can be developed as a [s]ingle[-][f]amily [r]esidence.**
>
> 6. Unnecessary hardship has been created by [RDM] in that the [P]roperty **could be used for its permitted use as a [s]ingle[-][f]amily [r]esidence.**
>
> 7. The use variance will alter the essential character of the neighborhood or [R-1 District] in which the [P]roperty is located[ ] and substantially or permanently impair the appropriate use or development of adjacent properties and be detrimental to public welfare.
>
> 8. The use variance requested does not represent the minimum variance that will afford relief to [RDM].
>
> 9. There has been no showing by [RDM] that the [17.9-]acre [Property] imposes such an undue hardship [to] support the issuance of the requested variances . . . .

(COL 4-9.) Regarding the requested dimensional variances, the ZHB made no findings of fact or conclusions of law, but rather summarily denied the requests in its order. (ZHB Op. at 8-9.)

RDM appealed to the trial court, arguing that (1) it is entitled to a use variance due to the unnecessary hardship caused by the physical characteristics of the Property; (2) it is entitled to a "validity variance"; (3) it has vested rights and/or a variance by estoppel to use the Property as it proposes; and (4) it is entitled to the requested dimensional variances. (R.R. at 36a-37a.) The trial court affirmed the ZHB's decision, concluding that the ZHB's decision was supported by substantial evidence and that RDM was not entitled to a validity variance or variance by estoppel or vested rights. (Trial Court Op. at 7-12) (unpaginated). The trial court did not address the ZHB's denial of the requested dimensional variances, which it concluded were moot. *Id.* at 12.

RDM now appeals to this Court.

## II.  ISSUES PRESENTED

RDM presents four issues for our review, which we condense and summarize for ease of discussion as follows: (1) whether the ZHB erred or abused its discretion in denying RDM's request for a use variance; (2) whether RDM is entitled to a validity variance; (3) whether RDM is entitled to a variance by estoppel, vested rights, and/or equitable estoppel; and (4) whether RDM is entitled to the requested dimensional variances.

## III.  DISCUSSION

## A.  STANDARD OF REVIEW

Where the trial court does not take any additional evidence, appellate review of the decision of a zoning hearing board is limited to determining whether the

board abused its discretion or erred as a matter of law. *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009). A zoning hearing board abuses its discretion where its findings are not supported by substantial evidence, which is such relevant evidence that a reasonable mind would accept as adequate to support the conclusions reached. *Id.* We may not substitute our interpretation of the evidence for that of the zoning hearing board, which has expertise in, and knowledge of, local conditions. *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 9, 13 (Pa. Cmwlth. 2015) (citations omitted). Even if we might come to a different conclusion, if the zoning hearing board's determination is supported by substantial evidence, we will not disturb it. *SPC Co. v. Zoning Board of Adjustment of the City of Philadelphia*, 773 A.2d 209, 214 (Pa. Cmwlth. 2001).

Further, a zoning hearing board's function is to weigh evidence, and it is the sole judge of the credibility and weight of the witnesses' testimony. *Id.* A zoning hearing board is "free to reject even uncontroverted testimony it finds lacking in credibility, including testimony offered by an expert witness." *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). We must view the evidence in a light most favorable to the party that prevailed before the zoning hearing board and afford that party all inferences reasonably drawn from the evidence. *Id.* Finally, because we review the zoning hearing board's decision, we do not address arguments challenging the trial court's decision. *Pham v. Upper Merion Township Zoning Hearing Board*, 113 A.3d 879, 887 (Pa. Cmwlth. 2015).

## B. ANALYSIS

Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC)[8] provides that a zoning hearing board may grant a variance if it finds that the applicant has met all of the following requirements:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the [applicant].
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

53 P.S. § 10910.2(a).[9] "The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances." *Pham*, 113 A.3d at 891. Essentially, an applicant seeking a variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 642 (Pa. 1983). The applicant bears the burden of proof, *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014), and the reasons for granting the variance must be "substantial, serious, and compelling." *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 148 (Pa. Cmwlth. 2011).

Regarding a use variance specifically, the Pennsylvania Supreme Court has stated as follows:

> [U]nnecessary hardship is established by evidence that[] (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance. . . .
>
> This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. . . .

*Marshall*, 97 A.3d at 330 (quotations, citations, and emphasis omitted). "While an unnecessary hardship can be established by demonstrating that the hardship falls squarely within one of these three categories, in practice the evidence presented often

---

[9] Section 1503.1(B) of the Zoning Ordinance similarly authorizes the ZHB to grant variances and imposes requirements identical to those contained in Section 910.2 of the MPC. (Zoning Ordinance, § 1503.1(B); S.R. at 250b.)

11

does not fit neatly in one category or another but overlaps." *Nowicki v. Zoning Hearing Board of the Borough of Monaca*, 91 A.3d 287, 292 (Pa. Cmwlth. 2014).

"Although a property owner is not required to show that his or her property is valueless unless a variance is granted, mere economic hardship will not of itself justify a grant of a variance." *Id.*; *see also Pham*, 113 A.3d at 892 (citing *Marshall*). "In other words, mere hardship is not sufficient; there must be unnecessary hardship." *South Broad Street Neighborhood Association v. Zoning Board of Adjustment of Philadelphia*, 208 A.3d 539, 548 (Pa. Cmwlth. 2019) (internal quotations and bracket omitted). The fact that a property may be used more profitably through the use proposed by the applicant is not a valid ground for granting a variance. *Society Created To Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of Philadelphia*, 814 A.2d 847, 850 (Pa. Cmwlth. 2003); *see also Marshall*, 97 A.3d at 333 ("evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance"). "In evaluating hardship[,] the use of adjacent and surrounding land is unquestionably relevant." *Valley View Civil Association*, 462 A.2d at 640.

In its written decision, the ZHB concluded that the Property has no unique physical characteristics that preclude RDM from using it as zoned because it is *possible* that a single-family dwelling *could be* constructed there. (COL 4-5.) The ZHB further concluded that RDM's purported hardship was self-created because, again, it was *possible* that RDM *could* construct a single-family dwelling. (COL 6.) The ZHB then summarily concluded, without additional findings or explanation, that the requested use variance would alter the essential character of the neighborhood, would substantially or permanently impair the use or development of adjacent properties, would be detrimental to public welfare, and did not represent the minimum variance

12

that would afford RDM relief.  RDM argues that the ZHB erred and abused its discretion in making these conclusions.  For the reasons that follow, we are constrained to agree.

### 1.  Unique Circumstances Causing Unnecessary Hardship

Preliminarily, it is clear from the record and the ZHB's written decision that the ZHB relied almost exclusively on the undisputed fact that the Property, at least theoretically, *could be* utilized as a residence to justify denying the use variance.  However, as set forth above, determining what is strictly possible within the confines of the Zoning Ordinance is not the pertinent inquiry.  Rather, a zoning board, in considering a use variance request, must determine whether the zoning regulations governing the subject property permit the landowner to make any *reasonable* use of the property as zoned.  To the extent that the ZHB applied a simple "possibility" standard, it erred as a matter of law.

With regard to the physical characteristics unique to the Property, the ZHB summarily concluded that none existed.  However, Pennsylvania zoning cases have for decades recognized that the character and use of surrounding properties can constitute unique circumstances justifying the issuance of a variance where they are sufficiently dissimilar to, and prohibitive of, the use of the subject property as zoned.  In *Valley View Civic Association*, a property owner applied to the City of Philadelphia Zoning Board of Adjustment for variances to permit her to convert her recently purchased property, zoned in a single-family residential district, into a take-out steak and sandwich shop and a two-story family dwelling.  462 A.2d at 639.  The property was situated between a convenience store and a gas station, and a bank and tire store were located across the street.  *Id.* at 641.  The building on the property had housed a nursery business with two apartments on the second floor prior to the owner's purchase.  *Id.*

13

Various other commercial uses surrounded the property in the immediate vicinity. *Id.* The board of adjustment granted the variances, finding that the property owner established the existence of an unnecessary hardship "by showing that the subject property is virtually surrounded by dissimilar and disharmonious commercial and industrial uses which render it virtually impossible to use the site for residential purposes." *Id.* The trial court affirmed, and this Court reversed. The Pennsylvania Supreme Court reversed and reinstated the trial court's order, concluding as follows:

> We are satisfied that the [board of adjustment] could reasonably have inferred from the evidence before it that the extensive commercial and industrial uses in the immediate vicinity rendered [the owner's] property virtually unusable and of scant value for traditional residential purposes. That evidence paints a picture of a property flanked by a large convenience store and a gas station on a heavily traveled roadway, surrounded by a patchwork of commercial and industrial businesses, vacant lots and intermittent dwellings. It would not be unreasonable to infer that a property so situated would be undesirable and hence unmarketable for residential use.

*Id.* at 642.

Similarly, in *Taliaferro*, we concluded that a zoning hearing board properly granted a use variance for the construction of a self-storage facility on a property zoned residential where substantial evidence in the record established that the character of the area surrounding the property was inconsistent with a residential use, which would have been impractical. 873 A.2d at 812. Specifically, the landowner presented evidence that the property had remained idle for over 50 years, that attempts to develop the property as residential were never implemented, and that the area surrounding the property primarily was commercial. *Id.* The property owner further presented testimony from a real estate appraiser and a professional engineer, both of

14

whom testified that development as a residence would be impractical and cost-prohibitive. *Id.* at 813. *See also Borough of Ingram v. Sinicrope*, 303 A.2d 855 (Pa. Cmwlth. 1973) (use variance properly granted to owner of property zoned residential to operate a beauty and gift boutique where characteristics of surrounding properties made residential use unfeasible, working an unnecessary hardship on the owner; property was surrounded by a shopping center, recreation areas, and a chiropractic clinic causing high levels of traffic, noise, light, dust, and water runoff).

Here, the Property is composed of vacant woodlands and has not been used for residential purposes since at least 1974, when Zom purchased it from Pennsylvania Coal Company. (R.R. at 308a.) RDM presented uncontroverted testimony from its real estate, land use, and engineering experts establishing that the extensive commercial and industrial uses that "shoehorn" the Property on two sides render the Property of distressed and minimal residential value. The southern portion of the Property is located in an industrial park designated by the local chamber of commerce. The nearest residential property is located approximately 1,000 feet away, and the nearest residential development is approximately 2,000 feet away. Thus, the immediate neighborhood, in part due to the Township's rezoning an adjacent property to accommodate the FedEx facility, has become by all accounts a busy industrial thoroughfare. The experts' uncontradicted testimony that the Property has distressed, minimal value for residential use thus establishes more than a mere economic hardship that frustrates RDM's preferred use of the Property. It is a hardship peculiar to this Property that is not present in the entire zoning district or a portion of it. *See Nowicki*, 91 A.3d at 292 (citing *Pohlig Builders, LLC v. Zoning Hearing Board of Schuylkill Township*, 25 A.3d 1260, 1272 (Pa. Cmwlth. 2011)). Under our precedents, this is sufficient as a matter of law to justify the issuance of a use variance.

15

That does not end our inquiry, however. As we have noted, a zoning board's findings of fact are entitled to deference and they will not be disturbed on appeal if they are supported by substantial evidence. Further, the evidentiary weight and credibility determinations of a zoning board, even with regard to uncontradicted evidence, are within its exclusive purview and will not be disturbed on appeal unless they are arbitrary and capricious. *See Whitacker-Reid v. Pottsgrove School District, Board of School Directors*, 160 A.3d 905, 916 (Pa. Cmwlth. 2017) ("[A] court will overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.") (internal quotation marks omitted).

Other than noting the undisputed fact that constructing a single-family residence on the Property was possible, nowhere did the ZHB make any specific findings regarding any unique characteristics of the Property or any hardship that the surrounding uses impose on the Property. Nor did the ZHB make any weight-of-the-evidence or credibility determinations supporting its conclusions that RDM did not satisfy its burden of proof. This is particularly significant given the fact that the testimony from all of RDM's expert and fact witnesses was virtually uncontradicted and, in certain respects, corroborated by the Township's own engineer, Mr. Amato. *See* Section 908(9) of the MPC, 53 P.S. § 10908(9) (where an application for a variance is contested, the zoning hearing board's decision "shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor"). Accordingly, we are constrained to conclude that the ZHB's findings regarding the unique characteristics of the Property and the hardship they impose are not supported by substantial evidence in the record. To the extent that the ZHB implicitly made credibility and evidentiary weight determinations without acknowledging or evaluating

16

the testimony of RDM's witnesses in its written opinion, those determinations were arbitrary and capricious and are disregarded. *Whitacker-Reid*, 160 A.3d at 916. *See also Bonatesta v. Northern Cambria School District*, 48 A.3d 552, 558 (Pa. Cmwlth. 2012) ("A capricious disregard of evidence exists only when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result.")

### 2. Self-Imposed Hardship

The ZHB summarily concluded that RDM's hardship was self-imposed because the Property could be used to construct a single-family residence. (COL 6.) Although the ZHB did not elaborate on this conclusion, to the extent that it suggests that the hardship is self-created because it merely frustrates RDM's preferred use of the Property, we have rejected that notion above.[10] We accordingly conclude that the ZHB's finding in this regard also is not supported by substantial evidence in the record.

### 3. Character of the Neighborhood and Public Welfare

Regarding impact on the neighborhood, the ZHB made no specific findings or conclusions regarding *how* RDM's proposed use would change its essential character. Rather, it merely concluded that a variance would alter the essential character of the neighborhood, an R-1 District. However, and contrary to the trial

---

[10] To the extent that the ZHB and Township suggest that this hardship is self-created because RDM did know or should have known of the zoning of the Property before contracting to purchase it, the argument fails. "[P]re-purchase knowledge of zoning restrictions limiting development, without more, does not create a hardship." *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061, 1069 (Pa. 2007) (quoting *Manayunk Neighborhood Council v. Zoning Board of Adjustment*, 825 A.2d 652, 657 (Pa. Cmwlth. 2003)). A hardship is deemed to be self-inflicted "only where [the purchaser] has paid an unduly high price because he assumed the anticipated variance would justify the price, or where the size and shape of the parcel was affected by the transaction itself." *Id.* Here, Mr. Neuman testified that RDM was not aware that the Property was zoned in the R-1 District when RDM contracted to purchase it. The Property was advertised for sale as being zoned industrial, and, when asked, the Township's Zoning Officer told RDM that it was zoned industrial.

court's conclusion, we do not find substantial evidence in the record to support a finding that the warehouse facility will change the essential character of the neighborhood or adversely impact the public welfare. First, regarding the neighborhood, although the Property is zoned in the R-1 District, that does not necessarily mean that its neighborhood is residential. To the contrary, the undisputed evidence of record indicates that the Property is surrounded on two of three sides with industrial uses and is partially included within the Grimes Industrial Park. The mere fact that one side of the Property is bordered by a vacant property zoned residential does not make the neighborhood "essentially" residential.[11]

Second, regarding adverse impact on the public, the real estate, land use, engineering, and traffic experts presented by RDM all testified that granting the variance would not negatively impact the public. In particular, Mr. Rosen testified that permitting construction of the proposed warehouse would not adversely affect the value of neighboring properties. (N.T., 2/27/20, at 28-29, 36, 45; R.R. at 76a-77a, 84a, 93a.) Mr. Fiore testified that, based on his traffic study of the road system surrounding the Property, it was adequate to accommodate the modest increase in traffic caused by the warehouse without any additional congestion. *Id.* at 175-78; R.R. at 223a-26a. Those opinions were not contradicted at the hearing, and the ZHB did not make any findings that they were not credible or unworthy of evidentiary weight.

---

[11] A significant portion of the public comment offered at the hearing on February 27, 2020, centered on complaints about the *current* perceived problems caused by the FedEx and TJ Maxx warehouse and distribution facilities already operating beside the Property. *See*, *e.g.*, N.T., 2/27/2020, at 216-29; R.R. at 264a-77a. The immediate neighborhood thus already contains industrial uses with traffic and noise effects greater than those posed by RDM's warehouse. RDM presented uncontradicted expert testimony that the impact of the warehouse in this regard would be minimal, and the ZHB made no findings to the contrary.

Thus, the ZHB's blanket conclusion that granting the use variance would adversely affect the character of the neighborhood and the public welfare is not supported by substantial evidence in the record.

### 4. Minimum Variance Necessary

Regarding the minimum variance requirement, the ZHB once again summarily concluded that the requested use variance "does not represent the minimum variance that will afford relief to [RDM]." (COL 8.) The ZHB made no additional findings or conclusions regarding *why* this was so and did not reject any of RDM's expert testimony. In this regard, Mr. Caracciolo testified that RDM's proposed warehouse would not be any closer to the neighboring residences than are the industrial uses already in place nearby, and Mr. Fiore testified that the traffic impact will be modest and fully accommodated by the existing roadway system. There is simply no evidence in the record suggesting that the proposed variance is greater in scope than is necessary to permit RDM's reasonable proposed use of the Property.

## IV. CONCLUSION

The ZHB's findings and conclusions with regard to RDM's requested use variance are not supported by substantial evidence. The ZHB therefore abused its discretion in denying the use variance, and we accordingly reverse the trial court's order in that respect.[12] Further, because the ZHB made no specific findings of fact or conclusions of law regarding RDM's requested dimensional variances and the trial court declined to address them, we remand this matter to the ZHB to make findings of fact, conclusions of law, and a new decision regarding the dimensional variances.

_____
PATRICIA A. McCULLOUGH, Judge

---

[12] Because we reverse on this ground, we need not consider RDM's alternative theories of validity variance, vested rights, variance by estoppel, and equitable estoppel.

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RDM Group and Zom
Construction Company,
        Appellants

        v.

Pittston Township Zoning
Hearing Board and Pittston
Township

:
:
:
:
:
:
:
:
:
:
:

No.  1081 C.D. 2021

## ***ORDER***

AND NOW, this 20th day of February, 2024, the September 2, 2021 order of the Court of Common Pleas of Luzerne County (trial court) is hereby REVERSED. This matter is REMANDED to the trial court for further remand to the Pittston Township Zoning Hearing Board with instructions to (1) grant RDM Group's (RDM) requested use variance; and (2) based on the record as it currently stands, make specific findings of fact, conclusions of law, and a new decision regarding RDM's requested dimensional variances.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge